**UNITED STATES of America,**
**Appellee,**

v.

**Ryan WASHINGTON, Defendant–**
**Appellant.**

No. 02–1468.

United States Court of Appeals,
Second Circuit.

Aug. 26, 2003.

Earle Giovanniello, New Haven, CT (J. David Griffin, New Haven, CT, on the brief), for Appellant.

Robert M. Spector, Assistant United States Attorney, Bridgeport, CT (Kevin J. O'Connor, United States Attorney, and William J. Nardini, Assistant United States Attorney, on the brief), for Appellee.

Present: JACOBS, F.I. PARKER,* and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED** that the judgment of the district court be **AFFIRMED**.

Defendant-appellant Ryan Washington appeals from a judgment entered after a jury trial in the United States District Court for the District of Connecticut (Nevas, *J.*) on August 1, 2002, convicting him on one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), and sentencing him principally to 120 months of imprisonment. Washington argues on appeal that [1] the jury instruction erred on the meaning of "possession" under 18 U.S.C. § 922(g)(1), and [2] an official victim sentencing enhancement was improperly applied.

1. *Jury Charge on "Possession"*: The statute under which Washington was convicted makes it "unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1) (2001).

Washington argues that the jury instruction on constructive possession could reasonably have been read to permit conviction without finding that he exercised control over the firearm or knew that he possessed it. He relies principally on *United States v. Hastings*, 918 F.2d 369 (2d Cir.1990), in which we reversed a conviction for gun possession when a jury instruction, supplemental instructions, and responses to jurors' questions "could quite possibly have left the jury believing that a finding of knowledge was not required to convict on any of the counts." *Id.* at 373.

█ We review this issue only for plain error, as Washington did not "state 'distinctly' the grounds for his objection" to the instruction in the proceedings before the district court. *United States v. Sala-*

---

\* The Honorable Fred I. Parker, who was a member of the panel, died after oral argument, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

*meh,* 152 F.3d 88, 141 (2d Cir.1998). Reviewing the charge in its entirety, *see United States v. Weintraub,* 273 F.3d 139, 151 (2d Cir.2001), we find no error that is plain, that affects substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Unlike in *Hastings,* the district court in this case stated clearly that knowing possession of the firearm was required:

> To satisfy this element, you also have to find that he *knowingly possessed the firearm.* This means that he possessed it purposely and voluntarily, and not by some accident or not mistakenly. It also means that he knew that the weapon was a firearm, as we commonly use that word.

(Tr. of Jury Trial, dated Mar. 12, 2002, at 68–69 (emphasis added)). The court also instructed the jury to determine whether "the *firearm* [was] within the defendant's control," and whether "he possessed the *firearm.*" (*Id.* (emphasis added)). We find that these instructions were sufficient to rectify any ambiguity created by the instruction on constructive possession. *Cf. United States v. Vasquez,* 82 F.3d 574, 577–78 (2d Cir.1996) (observing that defendant could not have been convicted for "mere presence or proximity" to gun where charge "clearly required the jury to find that the defendant had the intent to exercise dominion or control over the firearm and that possession could not be established by accident or mistake").

2. *Official Victim Enhancement:* Section 3A1.2 of the United States Sentencing Guidelines directs the sentencing court to "increase by 3 levels" if, "during the course of the offense or immediate flight therefrom, the defendant ..., knowing or having reasonable cause to believe that a person was a law enforcement ... officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(b) (2001). " '[S]erious bodily injury' need not actually have occurred, so long as the defendant's conduct created a 'substantial risk' of such injury." *United States v. Ashley,* 141 F.3d 63, 68 (2d Cir.1998).

"Disputed facts with regard to sentencing need only be proven by a preponderance of the evidence, and we must 'accept the findings of fact of the district court unless they are clearly erroneous.' " *Ashley,* 141 F.3d at 69 (citations omitted). We review a sentencing court's legal conclusions *de novo,* but "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see also United States v. Downing,* 297 F.3d 52, 60 (2d Cir.2002). "Questions of whether the defendant knew his victims were officials and what actions he took are questions of fact," and determining "whether the defendant's conduct posed a 'substantial risk of serious bodily injury' ... requires an analysis of the risks to the officers in light of the court's findings as to the nature of the defendant's conduct and involves an application of the Guidelines to the facts." *Ashley,* 141 F.3d at 69 (citations omitted).

█ We find no error in the district court's application of § 3A1.2(b). Several detectives who sought Washington for questioning found him driving his car in New Haven. Two unmarked police cars stopped in front of Washington's car to box him in, and a plainclothes detective wearing a badge around his neck approached the driver's side door. Washington hit his accelerator and jumped forward, narrowly missing two detectives who leaped out of the way. He hit both police cars before leading the police on a high-speed chase.

Numerous courts have applied § 3A1.2(b) in analogous circumstances. *See, e.g., United States v. Gillyard,* 261 F.3d 506, 510 (5th Cir.2001) (affirming application of § 3A1.2(b) to defendant who led police on a car chase, "made threatening moves with his car towards the police vehicles," and "almost struck" a sheriff's car), *cert. denied,* 534 U.S. 1094, 122 S.Ct. 841, 151 L.Ed.2d 720 (2002); *United States v. Zaragoza–Fernandez,* 217 F.3d 31, 33 (1st Cir.2000) (affirming conclusion that defendant committed aggravated assault for purposes of § 3A1.2(b) and § 2A2.2 where defendant fleeing military base "saw [military police officer] in front of his car, had reason to appreciate that he was a law enforcement officer, continued to drive at him, and was prepared to strike him with his car if necessary to effectuate his escape"); *United States v. Matos–Rodriguez,* 188 F.3d 1300, 1304 & n. 9 (11th Cir.1999) (finding no merit in defendant's challenge to application of § 3A1.2, where defendant drove his car straight at a federal agent who attempted to apprehend him); *United States v. Miner,* 108 F.3d 967, 970 (8th Cir.1997) (holding that district court "properly increased [defendant's] offense level for assaulting a police officer [under § 3A1.2] when he rammed his car into a police roadblock"); *United States v. Valdez–Torres,* 108 F.3d 385, 390 (D.C.Cir. 1997) (affirming application of § 3A1.2 where defendant drove in direction of federal agent and agent's car).

Washington argues that he lacked intent to assault the police detectives (Def.'s Br. at 12–16), but the district court found otherwise, noting that Washington was fortunate he did not succeed. (Tr. of Sentencing Hearing, dated July 31, 2002, at 69–71 ("If that isn't an attempt to ... injure the police officers who were trying to arrest him....").) This finding was not clearly erroneous, and it triggers application of § 3A1.2(b) under any available definition of assault. *Cf. United States v. Lee,* 199 F.3d 16, 19 (1st Cir.1999) (dictum) ("[T]he policy of this guideline—to protect official victims—embraces the case where an escaping criminal drives straight at a police officer, knowing him to be there, regardless of whether the criminal desires to hit him; so long as the criminal has ample reason to know that fear will be caused, the lack of purpose to cause fear should not matter.") (emphasis omitted).

\* \* \* \* \* \*

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**